UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHRIS WRIGHT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-1378 (RC) |
| | : | | |
| v. | : | Re Document No.: | 6 |
| | : | | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | : : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

DENYING DEFENDANT'S MOTION TO DISMISS

### I.  INTRODUCTION

Plaintiff Chris Wright, proceeding *pro se*, brings this action under the Freedom of Information Act ("FOIA") against the Department of Health and Human Services ("HHS" or the "agency"), seeking records concerning COVID-19 vaccine safety studies.  HHS now moves to dismiss for failure to state a claim on the basis that Mr. Wright's four-item request fails to reasonably describe the records sought.  Because HHS did not notify Mr. Wright at the administrative level about its concerns with the scope of his request as required by agency's own FOIA regulations, the Court will deny HHS's motion to dismiss.  The Court will also address some of the parties' remaining arguments in an effort to facilitate prompt resolution of this dispute.

### II.  BACKGROUND

Mr. Wright is a self-described blogger who is interested in the safety of the COVID-19 vaccine.  Compl. ¶ 3, ECF No. 1.  On November 11, 2021, he submitted a four-item FOIA request to HHS via its online FOIA submission site.  Compl. at 5–6 ("FOIA Request"), ECF No.

1.[1]  The request sought "all records that refer or relate, in any way, to the items listed below," but curiously, no records were listed on that page—only definitions and other background information. *Id.* at 5. Instead, the records appeared on the second page of the request, under the heading "Records to be Produced:"

> 1) Decision memo(s) or other records regarding further studies of [the Vaccine Adverse Event Reporting System or "VAERS"] COVID vaccine adverse reaction reports, setting forth the decision(s) and underlying rationale(s)[;]
>
> 2) Any and all further studies of adverse reactions to COVID vaccines that have been conducted[;]
>
> 3) Any and all records discussing adverse reactions to COVID vaccines after the decision memo(s)[;][2]
>
> . . .
>
> 4) Any and all records previously released under same or similar FOIA requests.

*Id.* at 6. HHS acknowledged the request on the same day and assigned it a case number. Compl. ¶ 5. HHS subsequently referred the request to one of its components, the Center for Disease Control and Prevention ("CDC"), which also assigned the request a case number. *Id.* ¶ 6; CDC Letter at 13 (Nov. 16, 2021), ECF No. 8-1.[3] Mr. Wright requested a status update, and CDC

---

[1] The FOIA request Mr. Wright attached to his Complaint does not appear to be the original request because it strikes through Item 3 and includes the modified Item 3 below it. As will be discussed in this section, Mr. Wright modified Item 3 months after submitting the original request. Despite this discrepancy, the Court can safely assume that the original request is similar to the attachment in all other respects. *See* Def.'s Mot. to Dismiss at 2, ECF No. 6 (referring to Mr. Wright's attachment as the original request and acknowledging that "Plaintiff attached to the Complaint" a "copy of the FOIA request" that reflects modified Item 3).

[2] As explained *supra* note 1, Item 3 was later modified. The version printed above uses the original language.

[3] Mr. Wright's correspondence with CDC is located in Exhibits A and B to his Opposition, both of which appear at ECF No. 8-1. He did not paginate all of his attachments, so the Court will cite to his attachments using the automatically generated ECF page numbers. Although these documents were not attached to the Complaint, the Court may properly consider them in resolving the motion to dismiss because they are incorporated by reference to the

responded that it was currently conducting a search. CDC Letter at 15 (Jan. 4, 2022). After Mr. Wright submitted a request for expedited processing on March 7, 2022, CDC responded the next day with four interim response letters. Compl. ¶ 6; CDC Letter at 16 (Mar. 8, 2022) ("First Interim Release"); CDC Letter at 18 (Mar. 8, 2022) ("Second Interim Release"); CDC Letter at 19 (Mar. 8, 2022) ("Third Interim Release"); CDC Letter at 20 (Mar. 8, 2022) ("Fourth Interim Release").

The First Interim Release, corresponding to Item 1 of the request, informed Mr. Wright that no responsive records existed but recommended that he submit a request directly to the Food and Drug Administration ("FDA"). First Interim Response at 16. The Second Interim Response, corresponding to Item 2 of the request, provided Mr. Wright a public link to CDC's website containing studies of COVID-19 vaccines. Second Interim Response at 18. The Third Interim Response, corresponding to Item 4 of the request, indicated that CDC had located 13 pages of responsive records and decided it would disclose them in full. Third Interim Response at 19. The Fourth Interim Response, corresponding to Item 3 of the request, informed Mr. Wright that CDC was "unable to process your request as it is currently stated" and asked him to "substantially narrow[]" the scope of Item 3 because it was "unduly burdensome." Fourth Interim Response at 20.

After Mr. Wright sent another follow-up inquiry, Wright Email at 21 (Mar. 21, 2022), CDC informed him the next day that "the agency responded to the portions of your request which were reasonably described, in our first, second and third interim releases," CDC Letter at 22 (Mar. 22, 2022). CDC further noted that it would keep his request "on hold" until he agreed

---

complaint, which relies on these letters and describes them in detail. *See Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013).

to narrow the scope of Item 3. *Id.* Mr. Wright provided a response on April 4, 2022, in which he revised Item 3 to read as follows:

> records created after the decision memo(s) discussing or containing analysis of mortality as an adverse reaction to COVID vaccines, with search terms derived from the concept of mortality including, but not limited to 'death', 'deaths', 'dying', 'died', 'dead', 'kill', 'killing', and 'murder'.

Wright Letter at 2 (Apr. 4, 2022); FOIA Request at 6. Mr. Wright again sought expedited processing. Wright Letter at 1 (Apr. 4, 2022). He also claimed that his request was "mishandled" because although he "directed [it] to HHS as a whole," only one HHS component, CDC, responded to his request. *Id.* On April 7, 2022, CDC acknowledged Item 3's "narrowed scope" in a short letter. CDC Letter at 23 (Apr. 7, 2022). According to Mr. Wright, besides the April 7 acknowledgement from CDC, he has not received any communication from HHS or CDC after April 4, 2022 concerning his FOIA request. Compl. ¶ 6. On May 18, 2022, Mr. Wright brought suit in this Court. *See generally id.*

## III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief

4

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555. Still, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

"Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'" *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(3)(A)). "[A]lthough 'FOIA cases typically and appropriately are decided on motions for summary judgment,' a motion under Rule 12(b)(6) is the appropriate vehicle for determining whether a plaintiff's request reasonably describes the records sought[.]" *Gun Owners of Am., Inc. v. FBI*, 594 F. Supp. 3d 37, 42–43 (D.D.C. 2022) (citations omitted)); *see Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 922 F.3d 480, 487–88 (D.C. Cir. 2019) ("[T]o plead a plausible claim that an agency has 'improperly' withheld its records, we require a plaintiff . . . to allege that it made a procedurally compliant request.").

## IV. ANALYSIS

HHS urges the Court to dismiss the Complaint because Mr. Wright's FOIA request does not "reasonably describe[]" the records sought and therefore fails to state a claim. 5 U.S.C. § 552(a)(3)(A); *accord* 45 C.F.R. § 5.24(b)(1)(ii), (b)(2) (HHS regulation). The parties do not dispute this is the relevant legal standard. According to HHS, Mr. Wright's request does not

5

reasonably describe the records he seeks because it contains the overbroad phrase "refer or relate, in any way"; lacks adequate search limits; and imposes an unreasonable burden on the agency. Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss ("Mot.") at 5–12, ECF No. 6-1. Mr. Wright counters that: there is no bright-line rule for what phrases render a request overbroad; his request is limited and specific; and his request seeks not only records referring or relating to the four items, but also the underlying documents themselves. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n") at 3–20, ECF No. 8. Mr. Wright also argues that despite his good-faith efforts to communicate with the agency, HHS violated its own FOIA regulations by never informing him at the administrative level about its concerns with the scope of his request. *Id.* at 20–23.

    The Court starts with Mr. Wright's last argument. FOIA provides that an agency administering the FOIA statute may issue "published rules stating . . . procedures to be followed." 5 U.S.C. § 552(a)(3)(A). HHS's briefing acknowledges that one such regulation provides: "Requests must reasonably describe the records sought and contain sufficient information to enable the FOIA office to contact you and transmit records to you. *If we determine that a request does not meet these requirements, we will attempt to contact you if possible.*" 45 C.F.R. § 5.24(b)(2) (emphasis added); Mot. at 12. Despite this clear procedure, however, HHS *never* contacted Mr. Wright concerning any deficiencies in his request—indeed, HHS does not dispute that it stopped communicating with Mr. Wright after it provided him a case-tracking number. Compl. ¶ 6; Opp'n at 13–14. Even if CDC, a component to HHS, could act for its parent agency here, it also failed to comply with the same regulation.[4] True, CDC

---

[4] Notably, CDC is bound to the same regulation as HHS. *See* Centers for Disease Control and Prevention, Frequently Asked Questions: CDC/ATSDR, at https://www.cdc.gov/od/foia/faqs/index.htm ("What rules govern CDC/ATSDR's FOIA

contacted Mr. Wright to inform him that Item 3 was deficient because it was "unduly burdensome" and "must be substantially narrowed." Fourth Interim Response at 20. But that letter did not suggest that the phrase "refer or relate, in any way" was what made Item 3 (or any of the items, for that matter) defective. To the contrary, CDC actually characterized Items 1, 2, and 4 as "*reasonably described*." CDC Letter at 22 (Mar. 22, 2022) (emphasis added).

HHS's failure to follow its own regulation is fatal to its motion to dismiss. If HHS believes Mr. Wright's requests are overbroad or burdensome, it is required by its own regulation to specify these deficiencies to Mr. Wright. By neglecting its own procedure and challenging the reasonableness of Mr. Wright's requests for the first time in Court, HHS has deprived Mr. Wright of an opportunity to cooperate with the agency to narrow the scope of his request without judicial intervention. Mr. Wright's decision to modify Item 3 after CDC noted its deficiency shows that he is willing to work in good faith with HHS (and its relevant components) to narrow his request. FOIA procedures exist precisely to streamline this process. *See Cable News Network, Inc. v. FBI*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017) ("Complying with the regular process allows an agency 'an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" (citation omitted)); *cf. Viasat, Inc. v. FCC*, 47 F.4th 769, 776 (D.C. Cir. 2022) ("[A]n agency 'abuses its discretion when it arbitrarily violates its own rules[.]'" (citation omitted)).

In the interest of facilitating the prompt resolution of Mr. Wright's request, the Court will address some of the parties' remaining arguments. Both parties somewhat overstate their positions. On the one hand, the Court agrees with Mr. Wright that his request seeks *both* records

---

activities? The CDC/ATSDR FOIA Office follows the rules set forth in the Department of Health and Human Services' FOIA regulations at 45 CFR PART 5.").

referring to or relating to Items 1–4 *and* the Items 1–4 themselves.  An agency is "bound to read [a FOIA request] as drafted, not as either agency officials or the request might wish it was drafted." *Gun Owners*, 594 F. Supp. 3d at 46 (cleaned up).  At the same time, "[i]n light of FOIA's pro-disclosure purpose, an agency has 'a duty to construe a FOIA request liberally.'" *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).  "As this Circuit has instructed, even when a request is 'not a model of clarity,' an agency must 'construe [the] request liberally,' particularly when a 'request is reasonably susceptible to a broader reading.'" *New Orleans Workers' Ctr. for Racial Just. v. ICE*, 373 F. Supp. 3d 16, 34 (D.D.C. 2019) (quoting *LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003)).

      Here, HHS argues that the request excludes the underlying documents because the phrase "refer or relate, in any way, to the items listed below" is best understood to modify each of the four items.  Recall that the request's first sentence provides, "Pursuant to the Freedom of Information Act . . . I hereby request that HHS produce . . . all records that refer or relate, in any way, to the items listed below."  FOIA Request at 5.  The rest of the request's first page provides definitions and other background, leaving the reader in suspense about what this phrase seeks to modify.  *Id.*  According to HHS, Mr. Wright tells us on the second page: Items 1–4.  But HHS overlooks the heading that Mr. Wright placed on the second page right before the four items, "Records to be Produced."  This heading—and its proximity to the four items—shows that Mr. Wright was, at a minimum, looking for these records themselves and not just records referring to or relating to them.  Although Mr. Wright's request certainly could have been clearer, it is "reasonably susceptible to [a] broader reading." *LaCedra*, 317 F.3d at 348.  Given the agency's

duty to construe FOIA requests liberally (not to mention Mr. Wright's *pro se* status), HHS must interpret the request to include *both* the underlying records and those that refer or relate to them.

On the other hand, the Court is inclined to agree with HHS that the request (that is, the portion of it seeking records referring or relating to Items 1–4) is overbroad. Mr. Wright's primary case, *Gun Owners of Am., Inc. v. FBI*, 594 F. Supp. 3d 46 (D.D.C. 2022), helpfully discusses the legal standard for a "reasonably described" request in this context. In *Gun Owners*, plaintiffs issued four FOIA requests to the FBI seeking records related to Virginia's procedures for conducting background checks prior to purchasing a firearm. *Id.* at 40. The court granted the FBI's motion to dismiss as to the first and third requests on the basis that they did not "reasonably describe" the records sought, but allowed the second request to proceed. *Id.* at 43. The FBI argued that the use of a term like "involving" was categorically overbroad, but the court rejected that argument as contrary to the principle that "the reasonable description requirement should not be reduced to a categorical test." *Id.* at 47 (citing *Nat'l Sec. Counsel v. CIA*, 898 F. Supp. 2d 233, 278 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020)). While the court recognized that a term like "related to" or "involving" "embed[s] an inherent vagueness that complicates the task of compliance," it found that the second request nonetheless "provide[d] several specific limitations that would enable a processor to zero in on the set of documents at issue." *Id.* at 48. Not so with the third request: in addition to the vagueness of the term "related to," the court explained that the third request "provides no basis on which the agency could narrow the places or time periods it would have to search." *Id.* at 51; *see also id.* at 51 (noting that it will be "unusual" for a request seeking documents "related to" a topic to satisfy FOIA's reasonably-description requirement).

9

Here, Mr. Wright likens his request to the second request in *Gun Owners* because he claims that the scope of his request has similar built-in limits.  He points out, for instance, that the records he seeks are "tightly confined" to the time period July 27, 2020 (the start of trials of the Pfizer COVID vaccine) to November 11, 2021 (the date of his request).  Opp'n at 11.  But these dates "are nowhere to be found in the request itself," or in any of Mr. Wright's communications with HHS or CDC.  *Gun Owners*, 594 F. Supp. 2d at 51.  Mr. Wright has no basis to assume that HHS would interpret the beginning of COVID-19 vaccine trials as the start date of the search, especially because records *related to* adverse effects of COVID-19 vaccines—for example, records of adverse effects of the flu vaccine—could easily precede that start date.  Just as *Gun Owners* rejected the requester's belated attempt to identify "implicit limitations" in a request, the Court also rejects Mr. Wright's attempt to narrow his request via his litigation brief.  *Gun Owners*, 594 F. Supp. 2d at 51.

Mr. Wright's claim that he limited the request by proposing search locations is also unpersuasive.  In one letter to CDC, he suggested "the CDC, the FDA, the HHS Secretary's office, another HHS leadership office, or an HHS policy office" as "likely repositor[ies]" of responsive information.  Wright Letter at 2 (Apr. 4, 2022).  But these were just suggestions.  Nothing indicates that Mr. Wright actually agreed to narrow the search to only these locations.  Quite the opposite: Mr. Wright acknowledged that responsive records "might be elsewhere."  *Id.*  These suggestions, short of actual restrictions, do nothing to support the reasonableness of Mr. Wright's request.  In sum, Mr. Wright's request shares characteristics with the *third* request in *Gun Owners*, which the court found overbroad.  *See Gun Owners*, 594 F. Supp. 3d at 52 ("Between the inherent vagueness of 'related to' *and* the lack of any temporal or custodial

limitation on the set of responsive documents, Request 3 . . . fails to provide adequate guidance for [agency] personnel in locating the documents sought." (emphasis in original)).[5]

\* \* \*

Looking ahead, the Court expects the parties to meet to discuss the scope of Mr. Wright's request, pursuant to HHS's own regulations at 45 C.F.R. § 5.24(b)(2) and consistent with this Opinion. To the extent a search is warranted, HHS should consider all components of the agency that would likely produce responsive information, not just CDC. *See Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998); *cf.* First Interim Release at 16 (describing the FDA's "sole purview over vaccine safety, efficacy and security in the United States"). The parties shall file a joint status report within 30 days of this Opinion.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 6) is denied. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 30, 2022                                            RUDOLPH CONTRERAS
                                                                                           United States District Judge

---

[5] To be clear, the Court does not read *Gun Owners* and its line of cases to treat a custodial limitation as a *necessary* condition to a reasonably described request, although it could certainly help make a request more reasonable. Where, as here, a request does not contain a custodial limitation, Opp'n at 15, an agency has no obligation to search "every record system"—only those "likely to turn up the information requested," *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *accord DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015). Because the agency is in a better position to predict which of its components are more likely to possess responsive records, it was up to it to make that assessment in the first instance. In fact, it did so by referring the request to CDC. But the Court is puzzled why the request was not also referred to the FDA. And the record is silent as to why HHS concluded that none of its own offices would have responsive records.

11