**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CHRIS WRIGHT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-1378 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 48, 52 |
| | : | | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | : : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANT'S MOTION TO EXTEND STAY; DENYING PLAINTIFF'S MOTION FOR ORDER

**I. INTRODUCTION**

In this Freedom of Information Act ("FOIA") action, the U.S. Department of Health and Human Services ("HHS" or "Defendant"), on behalf of the U.S. Food and Drug Administration ("FDA" or the "Agency"), seeks to extend the existing stay of the FDA's further response to the FOIA request at issue for an additional six months. HHS argues that the FDA is entitled to a stay because the FDA is under an extraordinary workload that could not have been predicted, and the FDA has been exercising due diligence in responding to the orders. Proceeding *pro* se, plaintiff Chris Wright ("Wright" or "Plaintiff") contends that because HHS admitted wrongdoing and the new administration's attitude towards the public's rights to public health information differ from the previous administration, this Court should not grant HHS's motion to extend stay. Separately, Wright requested this Court to order President Donald J. Trump's political appointees to personally review this case and see whether they want to handle the case differently than President Joseph R. Biden's administration. HHS argues that Wright's motion

lacks basis and should be denied. For the foregoing reasons, the Court grants HHS's motion to extend stay and denies Wright's motion for order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This action stems from a FOIA request submitted by Wright on November 12, 2021, seeking several categories of records related to adverse reactions to COVID-19 vaccines. Specifically, Wright made four requests: (1) "[d]ecision memo(s) or other records regarding further studies of [Vaccine Adverse Event Reporting System . . . ] COVID vaccine adverse reaction reports, setting forth the decision(s) and underlying rationale(s)[,]" (2) "[a]ny and all further studies of adverse reactions to COVID vaccines that have been conducted[,]" (3) "[a]ny and all records discussing adverse reactions to COVID vaccines after the decision memo(s)[,]" and (4) [a]ny and all records previously released under same or similar FOIA requests." Def.'s Statement of Material Facts Not in Genuine Dispute ("Def.'s Stmt.") ¶ 1, ECF No. 38-1; Decl. of Alesia Y. Williams ("Williams Decl."), Ex. A, ECF No. 38-3. The CDC acknowledged the request on November 16, 2021, and placed it in its complex processing queue. Def.'s Stmt. ¶¶ 2–3; Decl. of Roger Andoh ("Andoh Decl.") ¶ 5, ECF No. 38-5. Wright then revised the third item in the request to specifically target records analyzing mortality as a vaccine adverse reaction, and he instructed the CDC to use search terms including "death," "dying," "dead," "kill," and "murder," among others. Def.'s Stmt. ¶ 4; Andoh Decl. ¶¶ 17–18.

Following this, the CDC searched records within its Immunization and Safety Office ("ISO") and determined the records requested fell within that office's purview. Andoh Decl. ¶ 6. The CDC explained that the ISO is responsible for monitoring vaccine safety and therefore was the appropriate entity to conduct the search. *See* Def.'s Stmt. ¶ 5; Andoh Decl. ¶ 6. Regarding

Item 1, the CDC stated that it does not produce decision memos and therefore had no responsive documents, but it provided links to standard operating procedures and vaccine safety studies. *See* Andoh Decl. ¶ 11; Def.'s Stmt. ¶ 8. For Item 2, the CDC searched and shared links to all publicly available COVID-19 studies. *See* Andoh Decl. ¶ 12; Def.'s Stmt. ¶ 8. Following the revised request for Item 3, the CDC provided links to responsive public records using the mortality-related search terms. *See* Andoh Decl. ¶ 19; Def.'s Stmt. ¶ 8. Finally, for Item 4, a relevant CDC division searched the FOIA inbox, and the search produced thirteen responsive documents, which were subsequently released to Wright. *See* Andoh Decl. ¶ 14; Def.'s Stmt. ¶ 8.

Wright then proceeded by filing a motion to compel in July 2023, and in response, the CDC expanded its search related to Item 1. *See* Def.'s Stmt. ¶ 6; Andoh Decl. ¶¶ 23–24. From the expanded search, thirteen pages were partially redacted, six pages were withheld entirely, and the rest were released in full. Andoh Decl. ¶¶ 23–27; *see also* CDC Vaughn Index, ECF No. 38-6. The CDC also asked the Chief Medical Officer and the Incident Manager of the Coronavirus and Other Respiratory Viruses Division to search their emails and shared drives for relevant documents, which did not result in any responsive records. Andoh Decl. ¶ 25; Def.'s Stmt. ¶ 7.

In addition to the CDC's efforts, HHS itself conducted a search through the Office of the Chief Information Officer ("OCIO") within the Office of the Secretary. Def.'s Stmt. ¶ 10; Williams Decl. at 3, ECF No. 38-2. In response to Wright's motion to compel, HHS identified the OCIO as a potential source for responsive records. *Id.* On April 23, 2024, HHS directed the OCIO to perform a search of the agency's email enterprise for emails from key custodians: Secretary Xavier Becerra, Deputy Secretary Andrea Palm, and Chief of Staff Sean McCluskie.

Williams Decl. at 3–4. These individuals were selected based on their likely involvement in discussions regarding VAERS COVID vaccine adverse reaction reports. *Id*. ¶ 6. The search used the terms "Proposal AND COVID AND VAERS" and was limited to emails from December 14, 2020, through November 11, 2021, which aligned with the time frame specified in Wright's FOIA request. *Id*. ¶ 7. This search yielded a total of 1,632 pages of documents that were initially deemed "potentially responsive." *Id*. ¶ 8. Upon review by the HHS FOIA Office, only 25 pages were deemed fully responsive to Wright's request, and these were released in full. *Id*. The remaining 1,607 pages were deemed unresponsive, meaning they did not contain relevant information related to adverse reactions to COVID vaccines or related decision memos and studies. *See id*. at 3–4. A final decision letter, along with the 25 responsive pages, was sent to Wright on September 12, 2024. *Id*. at Ex. B, ECF No. 38-4. This letter communicated the results of the search and provided the requested documents. *Id*.; Def.'s Stmt. ¶¶ 10–12.

### B. Procedural Background

On October 11, 2023, HHS moved for an eighteen-month stay of FDA's response to the request at issue under 5 U.S.C. § 552(a)(6)(C) and *Landis v. North American Co.*, 299 U.S. 248 (1936), because of the unprecedented burden from the court orders in *Public Health & Medical Professionals for Transparency v. FDA*, No. 21-cv-1058 (N.D. Tex.) ("*PHMPT I*") and *Public Health & Medical Professionals for Transparency v. FDA*, No. 22-cv-0915 (N.D. Tex.) ("*PHMPT II*"). Def.'s Mot. Extend Stay & Mem. in Supp. ("Mot. Stay") at 1, ECF No. 48. This Court granted the eighteen-month stay, but it expired on April 11, 2025. *Id*. at 3. With the two cases and additional changes in their circumstances, Defendant seeks to extend the FDA's stay for an additional six months. *Id*. at 2. Additionally, on May 9, 2025, Wright requested this Court to order President Trump's political appointees in the HHS Secretary's office, the Civil

Division at the Justice Department, and in the D.C. U.S. Attorney's office to review the case. Pl.'s Mot. for Trump Admin. Review & Mem. in Supp. ("Mot. Order") at 1, ECF No. 52. Wright wanted President Trump's political appointees to review the case and decide whether the appointees wanted to decide differently than the previous administration's decision. *Id*.

### III.  LEGAL STANDARD

The scope of FOIA gives the district court authority to enjoin an agency from withholding agency records and order the production of any agency records improperly withheld, and review the defendant's actions in the district in which the complainant resides, or has the defendant's principal place of business, or in which the agency records are situated, or in the District of Columbia. *See* 5 U.S.C. § 552(a)(4)(B).  This judicial authority can only be invoked under the jurisdictional grant conferred by 5 U.S.C. § 552 (a)(4)(B) if an agency has "improperly withheld agency records." *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (internal quotation marks omitted).

In considering a motion to stay proceedings, the Court will not grant a stay if it would "unnecessarily delay proceedings" or when consolidating cases would "necessitate a renewed round of briefing by all parties." *Bell v. Dep't of Def.*, No. 16-cv-2403, 2018 WL 4637006, at *18 (D.D.C. Sept. 27, 2018).  "A trial court has broad discretion to stay all proceedings in a case while awaiting the outcome of other proceedings." *Faizi v. Garland*, No. 24-839, 2024 WL 5075824, at *2 (D.D.C. Dec. 11, 2024).  Thus, courts consider: (1) the injury to the movant if the litigation proceeds without a stay, (2) the injury to the non-movant if a stay is granted, and (3) the court's interest in judicial economy. *See Hulley Enters. Ltd. v. Russian Fed'n*, 502 F. Supp. 3d 144, 152 (D.D.C. 2020).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (alteration in original) (quoting *Landis*, 299 U.S. at 254–55).  Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

## IV.  ANALYSIS

Upon consideration of the parties' submissions—HHS's motion to extend stay, Wright's motion for order, and the accompanying responses—the Court identifies two principal issues that warrant resolution.  First, in resolving the FDA's motion to stay, the Court must determine whether HHS had an unreasonably large volume of requests, inadequate resources to resolve the requests, and a good faith effort in the due diligence of the requests.  Second, in resolving Wright's motion for order, the Court must address whether it can, or should, order President Trump's political appointees to personally review this case and decide whether the appointees want to handle the matter differently than the previous administration.  The Court will address each of these issues in turn.

### A.  Motion to Extend Stay

HHS argues that the FDA is entitled to extend the stay for an additional six months because active litigation in *PHMPT I* and *PHMPT II* has imposed "an extraordinary workload" on FDA, and "FDA [has] experienced a significant reduction in force."  Mot. Stay at 1–2.  The Court agrees.

"Generally, an agency receiving a FOIA request must determine whether to comply with the request within 20 working days."  *See Leadership Conf. on Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246, 259 (D.D.C. 2005) (citing 5 U.S.C. § 552(a)(6)(A)(i)).  If an agency fails to

comply with the applicable time limit provisions, the individual who requested access to the agency's records is considered to have exhausted all administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i). However, if the Government demonstrates that exceptional circumstances exist and that the agency is exercising due diligence in processing the request, the court may retain jurisdiction and grant the agency additional time to complete its review of the records. *See id.* This Circuit has held that through 5 U.S.C. § 552(a)(6)(C), Congress intended:

> [T]o mean that "exceptional circumstances exist" when an agency, like the [FDA] here, is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

*See Open Am. v. Watergate Special Prosecution Force,* 547 F.2d 605, 616 (D.C. Cir. 1976). An agency's "good faith effort and due diligence" in responding to lawful FOIA requests—by processing them "on a first-in, first-out basis," except when "exceptional need or urgency" is demonstrated—constitutes compliance with the Act. *Id*.

The Court finds that exceptional circumstances existed for the FDA within Congress' interpretation of 5 U.S.C. § 552(a)(6)(C). First, the court-ordered productions in *PHMPT I* and *PHMPT II*—combined with Wright's requests—created a volume of requests that vastly exceeded Congress' expectations. *See Gonzales*, 404 F. Supp. 2d at 259 (stating that an agency that received a request for sixteen "projects" was not enough to be considered an exceptional circumstance). Here, the FDA received a request for "approximately 5.7 million pages of COVID-19 vaccine-related records" which required FDA to "produce records at rates ranging from a total of 90,000 to 180,000 pages per month since July 2023." Mot. Stay at 4. Second, the FDA did not have the adequate resources to deal with this excess of volume of requests. During this request period, the FDA experienced a significant reduction in workforce that was

7

unplanned. *Id*. at 2; *see Martin Bros. Constr. v. United States*, 176 Fed. Cl. 384 (2025) (holding exceptional circumstances did not exist when a reduction in workforce was planned). Lastly, the FDA exercised due diligence throughout the requests. The FDA "implemented a multi-track process for handling FOIA requests" to combat the large volume of requests. Mot. Stay at 6; *see Democracy Forward Found. v. DOJ*, 354 F. Supp. 3d 55, 62 (D.D.C. 2018) (holding that an agency that implemented a multi-track processing system for FOIA requests had shown sufficient evidence of due diligence). The new multi-track system would place requests into "one or more of six queues based on volume, complexity, and/or subject matter and requests in each queue generally assigned to reviewers for processing on a first-in, first-out basis." Mot. Stay at 6. These implementations indicate that even with the immense number of documents that needed to be processed, the FDA had created a system to best alleviate any inevitable delays. Thus, the FDA has shown due diligence.

For the reasons stated above, HHS is entitled to a six-month extension of the stay because the FDA demonstrated that an exceptional circumstance existed and handled the request process diligently.[1] The Court will therefore grant HHS's motion to extend stay.

### B. Motion for Order

Additionally, Wright requested that this Court order President Trump's political appointees in the HHS Secretary's office, the Civil Division at the Justice Department, and in the D.C. U.S. Attorney's office to review the case. Mot. Order at 1. Wright argues that the new

---

[1] HHS is also entitled to the extended stay under *Landis*. In determining whether to grant a stay, the Court considers the injury to the movant if the litigation proceeds without a stay, the injury to the non-movant if a stay is granted, and the Court's interest in judicial economy. *See Hulley*, 502 F. Supp. 3d at 152. The FDA is working under limited resources while trying to manage an excess workload, there is no injury to Wright if a stay is granted, and a stay will allow the FDA to properly review and release documents, thus simplifying issues before this Court.

administration would handle the matter differently in comparison to the previous administration. *Id.* The Court declines to issue such an order.

5 U.S.C. § 552(a)(4)(B) grants a district court jurisdiction to review "*de novo*" an agency's decision to withhold records and empowers courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). In addition to allowing the district court to enjoin the agency from withholding records, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

The Court finds that Wright is not entitled to the relief he is seeking by requesting this Court to order President Trump's political appointees to personally review his case. Under 5 U.S.C. § 552(a)(4), the only recourse that a district court can provide for Wright would be to enjoin the FDA from withholding the requested documents and assert reasonable attorney fees and other litigation costs against HHS. *See* 5 U.S.C. § 552(a)(4)(B), (E). These forms of recourse would only be available if this Court found the FDA to be improperly withholding the documents requested by Wright, which this Court has not. *See id.*; Mem. Op. Granting Def.'s Mot. Summ. J. at 27, ECF No. 59. Additionally, even if this Court can issue such an order, it would not do so. Given the constitutionally required separation of powers of co-equal branches of government, the Court, absent compelling circumstances not present here, will not insert itself into the internal operations of an executive agency. Wright maintains a First Amendment right to petition his government. If he wishes to bring his grievances about the handling of this matter to political appointees within HHS and DOJ, he is free to do so directly.

For the reasons stated above, Wright is not entitled to request this Court to order President Trump's political appointees to personally review his case and decide whether they would handle it differently than the previous administration. The Court will therefore deny Wright's motion for order.

## V.  CONCLUSION

For the foregoing reasons, HHS's Motion to Extend Stay (ECF No. 48) is **GRANTED** and Wright's Motion for Order (ECF No. 52) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 31, 2025                                                      RUDOLPH CONTRERAS
                                                                                           United States District Judge